UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RALPH WAYNE SWALLOW<br>*Plaintiff,* | : | |
| vs. | : | Civil Action No: CA 07 426 ML |
| DAVOL INC. and C. R. BARD INC.<br>*Defendants.* | : | |

## ORIGINAL COMPLAINT

COMES NOW, PLAINTIFF RALPH WAYNE SWALLOW ("Plaintiff" or "Mr. Swallow") and hereby files this *Original Complaint* complaining of DAVOL INC. and C.R. BARD INC. (hereinafter collectively referred to as "Defendants"), and for cause of action would respectfully show unto the Court as follows:

### I. Parties

1. Plaintiff is an individual and is a citizen and resident of the Draper, Utah County, Utah.

2. Defendant DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patch ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of

the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

## II. Jurisdiction

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the case is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court has authority to grant declaratory, injunctive, and monetary relief pursuant to 28 U.S.C. §§ 1343, 2201, and 2202, and to award costs and attorneys' fees under 28 U.S.C. § 2412.

6. This Court has personal jurisdiction over Defendants because they are either incorporated in Rhode Island or, at all times relevant, conducted substantial and continuous business in the State of Rhode Island designing, manufacturing, and/or distributing the defective product that is the subject of this action.

## III. Facts

7. The Kugel Patch is used to repair ventral hernias, or hernias of the abdominal region. The Kugel Patch is made of two pieces of mesh that surround a flexible plastic ring. The surgeon places the mesh patch in a small incision. The surgeon folds the patch and places it at the site of the hernia. The released ring is then designed to spring back into its original shape, flattening the patch. The meshlike material serves as a substrate, allowing the hernia patient's own tissue to grow and assist in healing the hernia.

8. The Kugel Patch is manufactured by BARD and their subsidiary, DAVOL, who owns the patent on the device.

9. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Kugel Patch was authorized by the FDA as a Class II medical device.

10. Soon after the Kugel Patches were placed on the market, DAVOL and BARD began receiving actual notices Kugel Patch defects and failures. Not only was there no device history record (DHR) review performed—as called for by protocol—but also DAVOL and BARD actively and intentionally concealed these notices concerning defective and dangerous condition(s) associated with the Kugel Patches from Mr. Swallow, Mr. Swallow's physicians, and the general public.

11. After the defective and dangerous Kugel Patch was already placed on the market, Defendants DAVOL and BARD conducted physician screenings and reviews beginning in 2002. According to protocol, these surveys and reviews were needed before placing the device on the open market. Furthermore, an Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, BARD and DAVOL failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. DAVOL and BARD actively and intentionally these complaints and concerns of the physician surveyors from Mr. Swallow, Mr. Swallow's surgeons, and the public at large.

12. On November 11, 2004, Mr. Swallow underwent a laparoscopic ventral incisional hernia repair surgery at Cottonwood Medical Center (now Intermountain Medical Center) in Murray, Utah. Mr. Swallow's hernia was repaired with a Kugel Patch (Product Code No. 0010208). The operative report states that "[Mr. Swallow] tolerated the procedure well, and was taken to the recovery room in stable and satisfactory condition per the completion of the surgery."

13. The Kugel Patch implanted in Mr. Swallow was designed, manufactured, sold and distributed by Defendants to be used by surgeons for ventral hernia repair surgeries and was further represented by Defendants to be an appropriate, cost-effective and suitable product for such purpose.

14. At the time of his operation, Mr. Swallow was not informed of, and had no knowledge of, the complaints, known complications and risks associated with the Kugel Patch, nor was Mr. Swallow on notice that the Kugel Patch that was inserted into his body was to be recalled.

15. During the spring and summer period of 2005, there was a substantial increase in the number of complaints with the Kugel Patch. Defendants' corporate executives were notified and thus made aware of these complaints. Nevertheless, in spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Kugel Patch manufacturing hold, and it was not until December 8, 2005 that the Defendants finally commenced a distribution hold. (Defendants have since admitted that these product quality hold and release procedures were not applied on a timely basis.) Furthermore, Defendants actively and intentionally chose not to immediately inform Mr. Swallow, Mr. Swallow's physicians,

the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches of the numerous complaints and complications they were on notice of, nor of the holds in effect.

16. On December 22, 2005, DAVOL recalled many sizes of Kugel Patches under a Class I recall notice, which included the type of Kugel Patch used in Mr. Swallow's ventral hernia repair. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices. Plaintiff was given no notice of the Kugel Patch recall.

17. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

i. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;

ii. misidentified numerous Kugel Patch complication events;

iii. failed to apply the product quality hold and release procedure on a timely basis;

iv. failed to properly follow the procedures for conducting design validation review;

v. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall;

vi. failed to provide full information which they knew regarding numerous Kugel Patch complaints;

vii. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce;

viii. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

18. On March 24, 2006, the initial Class I recall on the Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

19. On January 10, 2007, the existing recall on the Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product. As of that date, the total number of recalled Kugel Patches that were distributed amounted to more than 100,000 units.

20. On or about April 2007, Mr. Swallow began experiencing abdominal pain, accompanied by abdominal tenderness, nausea, abdominal distention, fever, and abdominal soreness.

21. Still unaware of the Kugel Patch recalls or the complications and defects known by Defendants to be associated with the Kugel Patches, Mr. Swallow sought medical treatment. His physicians, however, were unable to diagnose the cause of his suffering and attributed it to standard hernia repair or infection.

22. Mr. Swallow's condition worsened progressively, and by August 2007 the pain he was experiencing became extremely severe and debilitating. A CT scan of Mr. Swallow's abdomen showed a perforated bowel that was adherent to the abdominal wall, which caused peritonitis and sepsis. Hospitalization and surgery were immediately necessary.

23. On August 18, 2007, Mr. Swallow was transferred to LDS Hospital's trauma department in Salt Lake City, Utah and underwent an emergency, 7-hour, tedious surgery. During the surgery, the physicians discovered that the memory recoil ring of the Kugel Patch implanted insider of Mr. Swallow's body had fractured, and the broken ends

were protruding into Mr. Swallow's intestines, causing an enterocutaneous fistula and a perforated small bowel. The physicians performing the surgery noted the area surrounding the device was extremely infected and there was a large abscess around the Kugel Patch. The mesh of the Kugel Patch was adherent to the intestines, which necessitated a small bowel resection of more than 32 centimeters. During the long surgery, Mr. Swallow's physicians removed the defective Kugel Patch from his body and fortunately repaired all the damage it caused. At the end, Mr. Swallow was brought down to the recovery room in "satisfactory condition."

24. Mr. Swallow had to remain in the hospital for eight (8) days following the surgery. These eight days were saturated with overwhelming pain and discomfort, requiring much pain medication. After the eight long days of having to lie in a hospital bed, Mr. Swallow was released, but yet had to spend the next four (4) weeks with a wound vac to drain the wound and heal the large incision. All-in-all, Mr. Swallow had to take eight (8) weeks of medical leave from his job.

25. Because of the defective Kugel Patch and all the medical visits and surgeries it necessitated, Mr. Swallow has suffered and will continue to suffer physical pain and mental anguish.

26. Mr. Swallow has also incurred substantial medical bills and has suffered loss of other monies due to the defective Kugel Patch that was implanted in his body.

27. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

28. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

29. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

30. Upon information and belief, the complications and failures associated with the Kugel Patches are not limited to the sizes which DAVOL and BARD has already recalled.

31. Upon information and belief, DAVOL and BARD were aware of the defects in the manufacture and design of the non-recalled Kugel Patch sizes and chose not to issue a recall on all Kugel Patches in the face of the high degree of complication and failure rates

## IV. Causes of Action

### COUNT I: NEGLIGENCE

32. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

33. Defendants DAVOL and BARD were negligent to Mr. Swallow in the following respects:

34. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

35. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that

they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Kugel Patch users.

36. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were unreasonably dangerous and unsafe for the use and purpose for which it was intended.

37. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury and they failed to disclose the known or knowable risks associated with the Kugel Patch. Furthermore, DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Mr. Swallow.

38. Defendants DAVOL and BARD owed a duty to Mr. Swallow to adequately warn him and his treating physicians of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

39. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

40. As a direct and proximate result of the duties breached, the Kugel Patch used in Mr. Swallow's hernia repair surgery failed, resulting in much pain and suffering, mental anguish, doctor visits, subsequent procedures, and hefty medical bills.

41. As a direct and proximate result of DAVOL's and BARD's negligence, Mr. Swallow suffered severe pain, injuries and damages.

42. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore,** Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT II: VIOLATION OF THE R.I. DECEPTIVE TRADE PRACTICES ACT

43. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

44. Defendants DAVOL and BARD engaged in unfair and deceptive trading practices with Mr. Swallow in the following respects:

45. Defendants DAVOL and BARD are merchants who study, test, design, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Kugel Patch for hernia repair surgery.

46. Defendants DAVOL and BARD knowingly committed unfair and deceptive in their study, test, design, development, manufacture, inspection, production, marketing, promotion, advertising, distribution and/or sale of the Kugel Patch for hernia repair surgery.

47. Defendants DAVOL and BARD knowingly committed unfair and deceptive trade practices when they failed to safely design and construct an effective Kugel Patch for hernia surgery.

48. Defendants DAVOL and BARD knew or reasonably should have known that some Kugel Patches were at risk while they were engaging in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patch for hernia repair surgery. And specifically, Defendants knew or reasonably should have known that the "memory recoil ring" posed a significant risk of breakage, separation, migration, tearing and splitting after placement in the intra-abdominal space that posed the danger of severe harm and/or death to patients.

49. Despite their awareness of the risks posed by the Kugel Patches, Defendants DAVOL and BARD did not inform the FDA nor the general public at large prior to the December 2005 recall of its knowledge concerning the patches susceptibility to failure and the dangers posed to patients of the Kugel Patches.

50. Indeed, in violation of the R.I. Deceptive Trade Practices Act, Defendants DAVOL and BARD failed to give adequate warnings regarding the use and potential problems with such patches for hernia repair.

51. DAVOL's and BARD's actions all occurred while they were engaged in trade and commerce, and all such conduct occurred during the course of their business.

52. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge that they were failing and not performing as represented and intended showed complete indifference to or a conscious disregard for the safety of others justifies an award of additional damages for aggravating circumstances in a sum which will serve to deter DAVOL, BARD, and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT III: STRICT PRODUCT LIABILITY

53. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

54. Defendants DAVOL and BARD are strictly liable to Plaintiff in the following respects:

55. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

56. The Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. The Kugel Patch inserted into Mr. Swallow's body during his hernia repair surgery was a Class I recalled device that failed while in his body causing him to develop serious

physical complications which ultimately led to need to have a subsequent surgery to remove the defective mesh.

57. At all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

58. The Kugel Patch implanted into Mr. Swallow was being used in a manner reasonably anticipated at the time it was implanted in her by his surgeon.

59. The Kugel Patches, like the one found in Mr. Swallow, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mr. Swallow as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to Mr. Swallow;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to Mr. Swallow;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Mr. Swallow, would expect;

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

60. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT IV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

61. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

62. Defendants DAVOL and BARD are liable to Mr. Swallow for the negligent infliction of emotional distress in the following respect:

63. Mr. Swallow suffered severe emotional distress, which was as a result of Defendants' negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patch for hernia repair surgery.

64. Mr. Swallow suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

65. Therefore, DAVOL and BARD are liable to Mr. Swallow.

66. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

68. Defendants DAVOL and BARD are liable to Mr. Swallow for the intentional infliction of emotional distress in the following respect:

69. Mr. Swallow suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

70. Mr. Swallow suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in

failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Mr. Swallow.

71. Therefore, DAVOL and BARD are liable to Mr. Swallow.

72. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VI: BREACH OF IMPLIED WARRANTY

73. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

74. Defendants DAVOL and BARD are liable to Mr. Swallow for their breach of implied warranty in the following respect:

75. DAVOL and BARD sold the Kugel Patch that was implanted in Mr. Swallow. DAVOL and BARD impliedly warranted to Mr. Swallow, his physicians and health care providers that the Kugel Patch was of merchantable quality and safe for the use for which they were intended.

76. DAVOL and BARD knew or reasonably should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

77. Mr. Swallow, his physicians, and his health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

78. When the Kugel Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD, in that they had very dangerous propensities when used as intended and implanted into a patient's body and, as a result, could cause serious injury of harm or death to the end user.

79. As a result of DAVOL and BARD's conduct and actions, Mr. Swallow suffered such injuries and damages.

80. As such, Defendants DAVOL and BARD breached the implied warranty of merchantability are liable to Mr. Swallow for his injuries and the costs he incurred as a result from using the defective Kugel Patch.

**Wherefore,** Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VII: FAILURE TO WARN

81. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

82. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch to Cottonwood Medical Center (now Intermountain Medical Center) in Murray, Utah for hernia repair surgeries.

83. In performing Mr. Swallow's hernia repair surgery, the operating physician used and inserted into Mr. Swallow one of the Kugel Patches that Cottonwood Medical Center purchased from Defendants.

84. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Mr. Swallow received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

85. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the Kugel Patch devices. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

86. The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Mr. Swallow had his hernia repair surgery, the Kugel Patch was in the same condition as when manufactured, distributed and sold.

87. Mr. Swallow did not know at the time of use of the Kugel Patch during his surgery, nor at any time prior thereto, of the existence of the defects or dangerous propensities in the Kugel Patches.

88. Mr. Swallow suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

89. As such, Defendants breached their duty to warn about known defects and are liable to Mr. Swallow for the injuries he sustained and the costs incurred as a result of using the Kugel Patch.

90. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore,** Plaintiff respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

## COUNT VIII: FRAUD

91. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs as though fully set forth herein.

92. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch for hernia repair surgeries.

93. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Mr. Swallow received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

94. Defendants BARD and DAVOL were aware of the dangerous and defective condition of the products and intentionally withheld this information from Mr. Swallow, Mr. Swallow's physicians, the FDA, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

95. BARD and DAVOL fraudulently represented to Mr. Swallow, Mr. Swallow's physicians, and the general public that the Kugel Patch was a safe and effective product even though they were fully aware of the dangerous and defective nature of the Kugel Patch which likely could, and would, cause injuries such as those suffered by Mr. Swallow.

96. Mr. Swallow and his physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

97. As a direct and proximate result of Mr. Swallow's reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, Mr. Swallow was seriously and permanently injured.

98. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Composix Kugel Patch while fraudulently concealing

knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore,** Plaintiff respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL COUNTS.**

Respectfully submitted,

**MOTLEY RICE, LLC**

Donald Migliori
R.I. # 4936
321 South Main Street
Providence, RI 02903
Telephone: 401.457.7700
Facsimile: 401.457-7708

AND

**REICH & BINSTOCK**

Robert J. Binstock
Texas State Bar No. 02328350
Jordan M. Torry
Texas State Bar No. 24058152
4265 San Felipe, Suite 1000
Houston, Texas 77027
Telephone: 713.622.7271
Facsimile: 713.623.8724