# EXHIBIT A

FILED

NOV 17 2004

CAROL E. HIGBEE, J.S.C.

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE COMMITTEE ON OPINIONS**

# SUPERIOR COURT OF NEW JERSEY

COUNTIES OF
ATLANTIC AND CAPE MAY

**CAROL E. HIGBEE, J.S.C.**

1201 Bacharach Boulevard
Atlantic City, NJ 08401-4527
(609) 343-2190

## MEMORANDUM OF DECISION ON MOTION
Pursuant to Rule 1:6-2(f)

| | |
|---|---|
| ***CASE:*** | **In re VIOXX®** |
| ***DOCKET #:*** | **Case No. 619** |
| ***DATE:*** | **November 17, 2004** |
| ***MOTION:*** | **Plaintiffs' Motion to Prohibit *Ex Parte* Interviews** |
| ***ATTORNEYS:*** | **Christopher Seeger and David R. Buchanan – Plaintiffs**<br>**Diane P. Sullivan – Defendants** |

Having carefully reviewed the papers submitted and any response filed, I have ruled on the above Motion as follows:

Plaintiffs bring this motion in order to prohibit *ex parte* interviews of Plaintiffs' doctors by defense counsel.

## BACKGROUND

This matter arises from damages Plaintiffs claim to have incurred from the manufacture, sale, distribution and/or use of the drug VIOXX®, produced by Defendant Merck & Co., Inc. Due to the large number of cases that had been filed regarding the drug (approximately 193 as of the date of this order), on May 20, 2003, the New Jersey Supreme Court ordered that all litigation in this matter be designated a mass tort before this court.

Because the cases in this mass tort involve personal injuries allegedly sustained from use of VIOXX®, Defendant seeks to interview Plaintiffs' physicians in order to obtain informal discovery. Early on in this litigation, Plaintiffs executed and delivered to Defendant authorizations for the release of Plaintiffs' medical information. The authorizations were tendered in accordance with the New Jersey Supreme Court decision in Stempler v. Speidell, 100 N.J. 368 (1985).

On October 8, 2004, Defendant's counsel provided Plaintiffs' counsel with notice that they would be conducting an *ex parte* phone interview with one of plaintiff, Larry Boyer's doctors in compliance with the Stempler decision. On October 12, 2004, plaintiff Larry Boyer revoked his consent to the interviews, as was his right under the terms of the initial authorization form.

Plaintiffs now claim that *ex parte* interviews that defense counsel has with Plaintiffs' doctors (hereinafter Stempler interviews) should be prohibited because they violate privacy rights protected by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Defendant claims that HIPAA does not conflict with the Stempler decision and that the Act does not, and was not intended to apply to personal injury litigation where a party has put his or her medical condition at issue.

## ANALYSIS

### A. Stempler v. Speidell

In 1985, the New Jersey Supreme Court held that in personal injury litigation, a defendant's counsel could conduct informal interviews with a plaintiff's physician and that authorization for these interviews could be compelled from a plaintiff by a court order. Stempler, 100 N.J. at 382. Stempler involved a medical malpractice and wrongful death action

brought by a decedent's estate against one of the decedent's doctors who was the attending physician at the time the decedent died. Id. at 370-371.

The defendant sought to compel unrestricted authorizations that would permit the defendant's counsel to personally interview the decedent's treating physicians. The plaintiffs opposed the authorizations claiming that depositions were the only appropriate form of discovery to be used that wouldn't create an undue risk of disclosing confidential information that was not related to the litigation.

The Court weighed the interests in protecting the patient-physician privilege and the privacy interests of the plaintiffs in such cases against the defendant's right to interview a plaintiff's treating physicians instead of being restricted to formal, expensive, and inconvenient discovery methods, such as depositions and other procedures provided for by the Court Rules. Id. at 381. The Court concluded that these *ex parte* interviews, as well as other informal means of discovery that reduce the cost and time of trial preparation should be encouraged. Id. at 382. Consequently, the Court held that because a physician would not participate in such an interview without the consent of the plaintiff, the authorization could be compelled. Id. The Court made efforts to preserve the plaintiff's privacy interests and the patient-physician privilege by requiring defendants to provide reasonable notice of the time and place of the proposed interviews. Id. The authorizations also required defendant's counsel to "provide the physician with a description of the anticipated scope of the interview, and communicate with unmistakable clarity the fact that the physician's participation in an *ex parte* interview is voluntary." Id.

Further, the Court held that a plaintiff could seek and obtain a protective order, if an *ex parte* interview threatens to cause substantial prejudice to the plaintiff. Id. at 383. The protective order could either require that plaintiff's counsel be present during the interview or "in extreme cases," require that the defendant conduct a formal deposition. Id. The Court believed

that "the flexibility afforded by our decision will permit trial courts and counsel to fashion appropriate procedures in unusual cases without interfering unnecessarily with the use of personal interviews in routine cases." Id.

**B. HIPAA, the Privacy Rule, and Smith v. American Home Products Corp. Wyeth-Ayerst Pharmaceutical**

In 1996, Congress enacted the Health Insurance Portability and Accessibility Act, 42 U.S.C. § 1320d, *et seq*. It is Plaintiffs contention that HIPAA preempts the Stempler decision and prohibits the Stempler interview. The matter of whether the Stempler decision was preempted by HIPAA was directly addressed by the Honorable Judge Corodemus, J.S.C. in the case of Smith v. American Home Products Corp. Wyeth-Ayerst Pharmaceutical, 372 N.J. Super. 105 (Law Div. 2003) as an issue of first impression.

The Smith case involved a mass tort against manufacturers of the drug phenylpropanolamine ("PPA"). The plaintiffs in that case challenged the defendants' request for Stempler authorizations claiming that the informal discovery procedures were preempted by HIPAA. Smith, 372 N.J. Super. at 109. The Smith court ultimately found that HIPAA does not conflict with New Jersey's patient-physician privilege under N.J.S.A. 2A:84A-22.4 or with the informal discovery techniques permitted under Stempler. Id. at 110.

In rendering her decision, Judge Corodemus provided a detailed description of the history and purposes of HIPAA and the Privacy Rule. The Privacy Rule is a collection of regulations created by the Department of Health and Human Services that came effective in April of 2003 and sets forth the standards and procedures regarding the collection and disclosure of "protected health information" ("PHI"). Id. at 111. Judge Corodemus noted that a primary purpose of both HIPAA and the Privacy Rule is to control the dissemination of a patient's private medical information through electronic transmission. Id. at 123. The Judge also noted that both New

Jersey law and HIPAA provide exceptions to the patient-physician privilege in the instance of civil litigation. Id. at 125. Specifically, 40 C.F.R. § 164.512(e) allows for disclosure in the course of any judicial proceeding in response to a court order or in response to a subpoena, discovery request, or other lawful process, provided that certain requirements listed in the regulation are met. N.J.S.A. 2A:84A-22.4 provides:

> There is no privilege under this act in an action in which the condition of the patient is an element or factor of the claim or defense of the patient or of any party claiming through or under the patient or claiming as a beneficiary of the patient through a contract to which the patient is or was a party or under which the patient was insured.

HIPAA specifically provides that the Act supersedes any contrary provision of State law. 42 U.S.C. § 1320d-7(a)(1). State law is not preempted if it provides for additional protections beyond those afforded by federal regulations regarding patient health information. See 42 U.S.C.A. § 1320d-7(a)(1); 45 C.F.R. § 160.203. While HIPAA does not specifically authorize *ex parte* communications with plaintiffs' physicians, there is no explicit prohibition of such communications in the Act either. Law v. Zuckerman, 307 F.Supp.2d 705, 708 (D. Md. Feb. 27, 2004); see also Smith, 372 N.J. Super. at 132. After making this same observation, Judge Corodemus concluded that New Jersey law, should govern the courts and "*ex parte* interviews as a form of informal discovery may proceed as permitted under Stempler." Smith, 372 N.J. Super. at 132.

Although Judge Corodemus found that Stempler interviews were not prohibited by HIPAA, she also found that Stempler safeguards for disclosure authorizations were beneath the requirements set by HIPAA. Additionally, recognizing that mass tort cases may sometimes fall within the Stempler Court's meaning of "extreme cases," Judge Corodemus found that allowing *ex parte* interviews is not mandatory, but rather up to the court's discretion and in mass tort cases, formal discovery proceedings can be ordered. Id. at 131-133.

Ultimately, Judge Corodemus denied the use of *ex parte* interviews in the Smith case because of the large number of cases that had been filed and the very short period of time before trial was scheduled to begin. While the use of Stempler interviews was not allowed in Smith, Judge Corodemus specifically noted that they were not prohibited from future mass tort cases, "but rather, given the intricacy of such cases, special hearings early during case management for the design of HIPAA-compliant authorization forms may become the custom for conduct of Stempler interviews in future mass tort litigation." Smith, 372 N.J. Super. at 136.

**C. Bonanno v. American Home Product**

In a Case Management Conference on January 2, 2004, the Honorable Judge Charles J. Walsh, J.S.C. determined that Stempler interviews would not be allowed in the New Jersey diet drug mass tort. Judge Walsh declined to say whether he believed Stempler interviews were preempted by HIPAA.

Judge Walsh noted that it would be very difficult to control and administer cases by allowing Stempler interviews in that particular mass tort.

CONCLUSION

In their Memorandum of law in support of this motion, Plaintiffs assert three basic arguments. First, Plaintiffs claims that in this litigation, *ex parte* interviews would violate HIPAA. This argument is not supported by the language of HIPAA, or the case law interpreting the Act. Judge Corodemus clearly found, after a diligent evaluation of the legislative history and intent of HIPAA that the Act does not preclude *ex parte* interviews allowed by the Stempler decision. New Jersey law is not contrary to the federal objectives regarding privacy protections of patient health information. Indeed, Defendant's Memorandum of Law in opposition to this motion points out some areas where the Stempler decision provides for more protections of

health information than HIPAA. Consequently, this court agrees with the findings of Smith in that HIPAA does not preclude informal discovery techniques set forth in Stempler.

Most of Plaintiffs claims in support of the argument that *ex parte* interviews in this litigation would violate HIPAA deal more with case management and practicality issues than they do with the legal permissibility of the informal discovery techniques. Plaintiffs assert that allowing *ex parte* interviews would be a practical nightmare because of the difficulty in drafting authorizations and protective orders. They further claim that given the large number of cases involved in this mass tort and the even larger number of doctors involved, the court would be unduly burdened by hearings to determine the permissible scope of each interview. While, as previously mentioned, this does not impact the legality of whether the interviews can be held, it does relate directly to the second main point of Plaintiffs' argument.

The second main argument that Plaintiffs' raise in support of their motion, is that the authorization signed by many of the Plaintiffs early on in the litigation is not HIPAA compliant. The current authorizations that Plaintiffs seek to withdraw provides that each plaintiff "release all existing medical records and information regarding the [plaintiff's] medical care, treatment, physical condition, and/or medical expenses revealed by observation or treatment past, present, and future," to Defendant's counsel. While this authorization complies with some of the requirements set forth in Stempler, it clearly does not comply with either the intent or the express language of HIPAA and it must be changed. The current authorization allows for disclosure of information completely unrelated to the litigation at hand which is something that even Stempler discouraged. In order for *ex parte* interviews to even be considered as a possibility in this litigation, a new authorization must be drafted that fully conforms to the requirements set forth in 40 C.F.R. § 164.512(e) and 45 C.F.R. §164.508, and any other regulations under HIPAA that might narrow the scope of Stempler.

An authorization would be required that is in compliance with Stempler, HIPAA, and the Privacy Rule regulations for the disclosure of *ex parte* medical information. A proper scope for each interview must be determined. This explains why Judge Walsh decided that *ex parte* interviews were not allowed in the diet drug mass tort. The decision must be based upon the difficulty in managing such informal discovery methods in hundreds of cases at once, and not upon whether such interviews are preempted. While Defendant correctly points out that reliance on unpublished opinions and informal procedures such as transcripts from a management conference is disfavored by the Court Rules, this court is not relying on legal conclusions reached by Judge Walsh, but rather an acknowledgment that we face similar practical problems.

Stempler interviews were designed to allow a simpler, cheaper, more efficient and informal means of discovery than depositions. None of these will be achieved by *ex parte* interviews in this case. Counsel in oral argument acknowledged that some treating doctors even require their own lawyers at these interviews. Both counsel agreed maybe doctors needed to be advised as to their own possible liability for HIPPA violations and of the right to have their counsel present. The trial courts were given discretion to forbid Stempler interviews in "extreme cases." VIOXX® cases are not the basic personal injury case. The Court orders that the defendant proceed with depositions of doctors in lieu of Stempler interviews. Counsel acknowledged that depositions, at least as to prescribing doctors depositions, would almost always be required even if there were Stempler interviews.

The defendant also argues that in the interest of fairness if the defendant's counsel can't do an *ex parte* interview with plaintiffs' doctors, then plaintiffs' counsel should not be able to speak to their clients' own doctors either. There is no decision known to this court where a Judge has restrained counsel from talking to their client's own doctors.

Plaintiff's motion is granted.

CAROL E. HIGBEE, J.S.C.

XXXX Order is attached.

This decision will be posted on the judiciary website and can be viewed at http://www.judiciary.state.nj.us/decisions.htm for a period of six weeks from the motion return period.